739 F.2d 1393
 6 Soc.Sec.Rep.Ser. 137, Unempl.Ins.Rep. CCH 15,512
Thomas VINCENT, on Behalf of Howard VINCENT, Plaintiff-Appellant,
v.
Margaret M. HECKLER, Secretary of Health and Human Services,
Defendant-Appellee.
 No. 83-2066.
 United States Court of Appeals,
Ninth Circuit.
 Submitted May 17, 1984.
Decided Aug. 7, 1984.
 
 Richard A. Gutstadt, Oakland, Cal., for plaintiff-appellant.
 Michael R. Power, Asst. Regional Atty., Dept. of Health & Human Services, San Francisco, Cal., for defendant-appellee.
 Appeal from the United States District Court For the Northern District of California.
 Before WRIGHT, HUG, and NELSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Secretary of Health and Human Services denied Thomas Vincent's claim on behalf of his father for social security disability benefits. The district court affirmed the Secretary's decision. Vincent appeals, alleging that there was not substantial evidence on the record to support the administrative decision. A subsidiary argument is that the judge's failure to consider on the record certain evidence requires reversal. We affirm.
 
 I. FACTUAL BACKGROUND
 
 2
 On November 25, 1977, Howard Vincent suffered a transient ischemic attack. On September 13, 1979, while driving over a mountain pass in Colorado, Vincent suffered a second transient ischemic attack. On August 27, 1980, Vincent suffered a debilitating stroke. Vincent's insured status, however, expired on June 30, 1980. Thus, only disabilities existing before that time can trigger insurance benefits. See Jackson v. Richardson, 465 F.2d 998 (9th Cir.1972). Thomas Vincent argues that Howard Vincent's second ischemic attack left him unable to perform substantial gainful activity.
 
 
 3
 II. SUBSTANTIAL EVIDENCE SUPPORTS THE SECRETARY'S DECISION.
 
 
 4
 Dr. Chamberlain, the treating physician at the time of Vincent's second transient ischemic attack, reported that all symptoms had disappeared before Vincent's release from the hospital. Dr. Chamberlain examined Vincent again one month later and noted no disabling effects of the attack. Three months later, after he had returned home to California, Vincent was examined by a local physician, Dr. Postman. Dr. Postman prepared a fairly extensive medical report detailing Vincent's bronchopulmonary difficulties (allergies and asthma), but containing no information suggesting that Vincent was suffering from cardiovascular impairment. Finally, a clinical psychologist, Dr. Danton, who had counseled Vincent over the course of 29 visits beginning on October 29, 1979 (one month after the attack at issue here), submitted two ambiguous letters to the ALJ. In the first letter, Dr. Danton acknowledged that Vincent had suffered psychological difficulties as a result of the second attack. He concluded that Vincent "was able to manage a small coal supply company," because "this was a very low-stress job and ... he was greatly helped by his office staff." In the second letter, Dr. Danton strongly emphasized Vincent's disabilities, noting that managing the coal business was "a very qualified success" and that, after the attack, "things weren't going well" for Vincent. Together, however, these documents constitute substantial evidence to support the Secretary's decision.
 
 
 5
 III. FAILURE TO DISCUSS CERTAIN EVIDENCE DOES NOT REQUIRE REVERSAL.
 
 
 6
 Vincent accurately argues that the Secretary must make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently. See Lewin v. Schweiker, 654 F.2d 631, 634 (9th Cir.1981). The Secretary, however, need not discuss all evidence presented to her. Rather, she must explain why "significant probative evidence has been rejected." Cotter v. Harris, 642 F.2d 700, 706 (3d Cir.1981). Here, the evidence which the Secretary ignored was neither significant nor probative.
 
 
 7
 A. DR. SATTEN'S PSYCHIATRIC REPORT.
 
 
 8
 Dr. Satten, a psychiatrist, had treated Vincent in 1974 and 1975. He also saw Vincent twice in 1977 and once in 1978. Dr. Satten never saw Vincent after the 1979 stroke. However, after examining reports from several treating physicians and reading statements about Vincent's condition, Dr. Satten wrote a letter concluding that Vincent was severely impaired. Vincent accurately notes that the ALJ did not mention Dr. Satten's letter in his decision.
 
 
 9
 An ALJ must explain why he has rejected uncontroverted medical evidence. See Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir.1975). Here, Dr. Satten's letter was not "uncontroverted." It addressed the same issue as the medical reports prepared by Drs. Chamberlain and Postman. Where a material conflict in the evidence is present, only the ALJ can resolve it. See Richardson v. Perales, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Here, the ALJ's determination seems reasonable. After-the-fact psychiatric diagnoses are notoriously unreliable. See Schauer v. Schweiker, 675 F.2d 55, 60 n. 5 (2d Cir.1982). The ALJ was entitled to discount Dr. Satten's letter.
 
 B. LAY TESTIMONY
 
 10
 Mary Manser, a former employee of Vincent's, testified that Vincent suffered serious mental impairment as a result of his second stroke. Additionally, Thomas Vincent testified that his father's second stroke had left him impaired. The ALJ did not discuss this testimony in his hearing decision. Once again, this omission does not require reversal.
 
 
 11
 Although courts have upheld the use of lay testimony in some instances, see Singletary v. Secretary of HEW, 623 F.2d 217 (2d Cir.1980), it is not the equivalent of "medically acceptable ... diagnostic techniques" that are ordinarily relied upon to establish a disability. See 42 U.S.C. Sec. 423(d)(3); Hall v. Secretary of HEW, 602 F.2d 1372 (9th Cir.1979). The ALJ properly discounted lay testimony that conflicted with the available medical evidence.
 
 
 12
 AFFIRMED.