956 F.2d 274
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Jacqueline HAYS, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, Secretary, Defendant-Appellee.
 No. 90-35306.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 6, 1991.
Decided March 2, 1992.
 
 Before TANG, O'SCANNLAIN and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Jacqueline Hays appeals from the judgment of the district court affirming the Secretary's denial of her application for Supplemental Security Income ("SSI") benefits. Hays argues that the Secretary improperly rejected the opinion of an examining psychologist, failed to make specific findings regarding lay evidence, and improperly evaluated the testimony of a vocational expert.
 
 
 3
 * Hays was born February 12, 1933. She suffers from a disfiguring congenital facial deformity. She is a high school graduate, and did some course work in college and nursing school. Her only work in the past thirty years was care of the elderly in her home for nine months in 1983.
 
 
 4
 Hays applied for SSI benefits on January 6, 1987, alleging that she had been disabled since November 1986 by heart trouble. At her request a hearing was held before an ALJ. At the hearing, the ALJ considered evidence relating to Hays' heart problems and emotional disturbances. The ALJ found that Hays' impairments left her unable to return to her past work in adult foster care, but did not preclude light or sedentary work. He concluded that work within Hays' capabilities exists in significant numbers in the national economy, and that therefore she does not qualify for SSI benefits. Hays does not challenge the ALJ's assessment of her physical impairments on appeal, but contends that the ALJ failed to adequately consider the effect of her emotional impairments.
 
 
 5
 The evidence presented at the hearing included the testimony of Hays, her husband, and two friends. Hays herself, at the request of her attorney, testified only with respect to her exertional limitations, although she did say that she felt that she was not "really together." Bill Hays testified that his wife suffered from mood swings accompanied by memory lapses, during which she "hates everybody" and sometimes breaks things. He testified that she was in one of these unpleasant periods at the time of the hearing. Glen Henry, a friend of the Hays, testified that Hays had unpredictable moods during which she would use abusive language and not want to deal with people. Mrs. Henry corroborated her husband's testimony.
 
 
 6
 The ALJ then called a vocational expert, Dr. Hanoch Livneh, who testified that, based on her exertional limitations and transferrable skills, Hays retained the functional capacity to work as a blind aide or personal attendant. Dr. Livneh stated that these positions could not be held by a person who suffered from unpredictable severe mood swings.
 
 
 7
 Following the hearing, Hays was referred to Dr. Starr, a clinical psychologist, for evaluation. Dr. Starr reported that Hays was not employable "[b]ecause of her paranoid disorder and her borderline intellectual functioning." He also found that "her interpersonal relationships are often impaired," and rated her ability to relate to co-workers, deal with the public, and interact with a supervisor as poor. Although Dr. Starr's report included a diagnosis of "Delusional Disorder," he stated that he found "no evidence or report of hallucinatory or delusional thinking." Hays told Dr. Starr that she had not suffered any "angry spells" since her consultation with a community mental health counselor.
 
 
 8
 On April 26, 1988, after considering Dr. Starr's report and the evidence presented at the hearing, the ALJ issued a decision finding Hays ineligible for SSI benefits. The ALJ rejected Dr. Starr's conclusion that Hays was not employable, noting that, although Dr. Starr described Hays' intellectual functioning as "borderline," her IQ showed her to be capable of learning new skills applicable to repetitive work. The ALJ also relied on the fact that Dr. Starr had not found any evidence of delusional thinking, and had indicated that Hays' mistrust of others was be disregarded if the physician or psychologist relies on non-medical factors in reaching that conclusion. Sanchez v. Secretary of Health & Human Servs., 812 F.2d 509, 511 (9th Cir.1987).
 
 
 9
 Dr. Starr's report is internally inconsistent. Although he diagnosed a delusional or paranoid disorder, he did not find any evidence of psychotic or delusional thinking. Dr. Starr concluded that Hays did not trust others, but this conclusion need not indicate any mental impairment, given his finding that Hays "has been rejected by others due to her birth defect throughout most of her life. Moreover, his opinion that Hays was not employable appears to have been based partly on non-medical factors, such as the difficulties Hays' age and disfigurement would cause her in obtaining employment. The ALJ gave sufficient reasons for rejecting Dr. Starr's opinion that Hays is disabled.
 
 III
 
 10
 Hays also contends that the ALJ improperly disregarded the testimony of her husband and friends without explanation. The ALJ is entitled to discount lay testimony that conflicts with medical evidence. Vincent on Behalf of Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir.1984). If lay evidence is significant and probative, however, the ALJ must supply reasons for rejecting it, and those reasons must be supported by substantial evidence. See id.
 
 
 11
 The lay testimony here was both significant and probative. If believed, it suggested that her mood swings made Hays unsuitable for some work, including the two jobs the vocational expert cited as within her residual functional capacity. Hays' friends and family had the opportunity to observe her symptoms and daily activities. See Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir.1987) (descriptions of family and friends in a position to observe claimant's daily activities routinely treated as competent evidence).
 
 
 12
 In some respects, the testimony of Hays' husband was inconsistent with Dr. Starr's report. For example, Bill Hays testified that his wife's spells were accompanied by memory lapses, but Dr. Starr found that Hays' remote and recent memories were intact.[1] To the extent it conflicted with medical evidence, the lay testimony could be disregarded. However, the testimony of Bill Hays and the Henrys that Hays had unpredictable mood swings, during which she could not deal with other people, did not conflict with the medical evidence. In fact, Dr. Starr concluded that Hays would be likely to "develop conflictual and adversarial relationships with coworkers," a conclusion corroborated by the lay testimony.
 
 
 13
 The lay testimony was, however, inconsistent with Hays' own statements, both to Dr. Starr and on her self-evaluation form.[2] Hays told Dr. Starr that, since her visit to a mental health counselor, she no longer suffered from angry spells. On the questionnaire she stated that she had not had difficulty getting along with her employer or co-workers in the past, and that she does not argue with friends or have difficulty getting along with church members, neighbors, or others. This case is unlike the typical situation, in which lay testimony is adduced in support of the claimant's own recitation of symptoms. See, e.g., Sprague, 812 F.2d 1226; see also Prince v. Bowen, 894 F.2d 283 (8th Cir.1990); Huston v. Bowen, 838 F.2d 1125 (10th Cir.1988). In the face of Dr. Starr's report that Hays showed considerable insight into her own psychological functioning, and did not suffer from delusions or psychotic thinking, we are unwilling to require the ALJ to give specific reasons for rejecting the lay testimony in favor of Hays' own account.
 
 IV
 
 14
 Hays also contends that the ALJ improperly evaluated the vocational expert's testimony. When, as here, the claimant can no longer perform her past relevant work, the Secretary bears the burden of showing that work within her capabilities exists in the national economy. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988). The Secretary can meet this burden either through application of the "grid rules," 20 C.F.R. pt. 404, subpt. P, app. 2, or through the testimony of a vocational expert. The Secretary may rely solely on the grids only where they accurately describe the claimant's limitations. Gonzalez v. Sullivan, 784 F.2d 1417, 1419 (9th Cir.1986). The fact that the claimant suffers from both exertional and non-exertional limitations does not preclude use of the grids, however. Razey v. Heckler, 785 F.2d 1426, 1430 (9th Cir.), amended, 794 F.2d 1348 (1986). The grids may still be applied if the non-exertional limitations do not significantly restrict the number of jobs the claimant is capable of performing. See id.; Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.1983). Even if the non-exertional limitations are significant, the grids provide a frame of reference for decisions. 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(a).
 
 
 15
 In arriving at his determination that Hays was not disabled, the ALJ considered the testimony of the vocational expert and the framework of the grids. The vocational expert listed two jobs, blind aide and personal attendant, as light work to which Hays' skills were transferable. In response to questioning by the ALJ, the expert stated that neither job could be done by a person with "Dr. Jekyll and Mrs. Hyde-type mood swings," and that both require intact interpersonal skills. He did not cite any other jobs to which Hays' previous job skills could be transferred.
 
 
 16
 Nonetheless, substantial evidence supports the Secretary's conclusion that jobs within Hays' capabilities exist in the national market. Hays' own statements indicated that she was able to function socially. She is capable of learning new skills for repetitive work. The ALJ could conclude that her non-exertional limitations do not significantly limit the range of work available to Hays. Under the grids, given her age and education, Hays would not be considered disabled even if her job skills were not transferrable or she had no job skills at all. See 20 C.F.R. pt. 404, subpt. P, app. 2, §§ 202.13, 202.14. Thus, the ALJ was entitled to conclude that she could do work that exists in the national economy even in the absence of any vocational expert testimony.
 
 V
 
 17
 The ALJ's determination that Hays was not disabled was supported by substantial evidence.
 
 
 18
 AFFIRMED.
 
 TANG, Circuit Judge, dissenting:
 
 19
 I respectfully dissent.
 
 
 20
 As the Court acknowledges, the Secretary bears the burden of proving that work within Hays's capabilities exists in the national economy. See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988). On this record, however, I cannot agree that there is substantial evidence to support a finding that the Secretary has met this burden.
 
 
 21
 The Secretary's vocational expert testified that the two jobs within Hays's capabilities "really require intact interpersonal skills." He further stated, "if you're talking about an individual who may have that kind of mood swings, [sic] unpredictable mood swings as I understand here, I would say these two jobs would not accommodate such a swing." Thus, unless the Secretary discounts the lay testimony of Hays's husband and others regarding Hays's mood swings, the vocational expert's testimony cannot provide substantial evidence in support of the Secretary's conclusion that work is available to Hays. See Ratcliffe v. Heckler, 788 F.2d 1389, 1391 (8th Cir.1986) (refusing to uphold denial of benefits where lay testimony undermined assumption of vocational expert, and Secretary made no finding as to credibility of lay testimony); Smith v. Heckler, 735 F.2d 312, 318 (8th Cir.1984) (reversing denial of benefits where vocational expert testified that, based on limitations to which lay persons testified, no jobs were available to claimant).
 
 
 22
 Clearly, the lay testimony here is significant and probative. The Secretary is obligated to explain his decision to discount such testimony. See Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir.1988); Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir.1987); Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir.1984) (per curiam). Yet he does not.[1]
 
 
 23
 The majority excuses this omission by observing that Hays's own statements contradict the testimony that she experiences dramatic mood swings. These statements cannot provide a foundation for the majority's conclusion, however, because Hays's husband also testified that Hays does not remember when her mood has changed:
 
 
 24
 Jackie is really a neat person and she's really lovable except sometimes just that quick she can go off into another person or another attitude and she might be in that attitude for five minutes or three weeks or whatever and then she don't remember that. Okay, so sometimes she comes to me and she says, "I was sick again wasn't I?" and I say "very much so" and she said "how long did it last this time?" and I'll tell her as much as I can about it and then I have to fill her in on the things that have happened between the time that was in that, Okay, because she has no memory of that. And that's why we're having trouble today because she don't think there's anything wrong with her.
 
 
 25
 Thus, the lay testimony is significant in a second respect: In addition to refuting one of the premises on which the vocation expert relied (i.e., that Hays had a stable personality), the lay testimony also explains why Hays's own testimony regarding her personality cannot be trusted. Merely pointing to Hays's testimony therefore cannot excuse the Secretary's failure to explain why he has discounted the lay testimony of others. In attempting to excuse the Secretary's omission on this basis, the lay testimony of Hays's husband becomes all the more significant and probative. The necessity of an explanation for discounting his testimony therefore remains.[2]
 
 
 26
 The majority sidesteps the memory lapse testimony by ruling that it conflicts with certain observations made by Dr. Starr. The memory lapse testimony did not, however, conflict with Dr. Starr's ultimate conclusion that Hays suffers a delusional disorder.[3] Dr. Starr's report therefore does not provide a sufficient basis to disregard summarily the memory lapse testimony. Cf. Vincent, 739 F.2d at 1395.
 
 
 27
 In sum, I do not agree that the Secretary can be excused from explaining his decision to discount the lay testimony in this case. Without such an explanation, the conclusion of the vocational expert that Hays could find work is deficient and cannot provide the substantial evidence necessary to sustain the Secretary's decision denying Hays benefits.
 
 
 28
 I would remand this case to the Secretary for further proceedings.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 The dissent relies heavily on Mr. Hays' testimony that his wife did not remember her moods. This testimony was inconsistent with Dr. Starr's conclusion that Hays' memories were intact. It was also inconsistent with Hays' statement to Dr. Starr that her "angry spells" had ceased since she had been seeing a counselor. This statement suggests that Hays was indeed aware of her moods and believed they had stopped. Given Dr. Starr's further assessment that Hays has "appreciable insight into her own psychological functioning," we believe Mr. Hays' testimony about memory lapses was properly disregarded
 
 
 [2]
 Mr. Hays' testimony conflicted with his wife's in other respects as well. For example, he testified that the state stopped referring elderly persons to their home for foster care because of Mrs. Hays' mood swings. His wife, by contrast, testified that she had been told the layout of their house was not suitable for elderly care. These conflicts, together with Hays' statement to the doctor that her husband was "orchestrating her application for disability benefits" provide a further basis for the ALJ's decision to rely on Hays' testimony rather than her husband's
 
 
 [1]
 Instead, the administrative law judge declares that there is "nothing in the record to support a finding that the claimant's mood swings are directly related to any physical or mental impairment which would preclude all substantial gainful work." This statement incorrectly places the burden of proof on Hays when, at this stage of proceedings, the Secretary carries the burden
 
 
 [2]
 Dr. Starr's observations that Hays's "[r]ecent and remote memories are intact" and that she possesses "appreciable insight into her own psychological functioning" cannot excuse the Secretary's obligation to explain why the testimony of Hays's husband has been discounted. These generalized statements are made in the context of providing an overall picture of the patient, rather than in summarizing the results of a particular scientific examination. There is no indication that Dr. Starr investigated the allegations that Hays was unable to recall the fact or nature of her mood swings. Cf. Vincent, 739 F.2d at 1395 (no explanation need be provided for discounting lay testimony when such testimony directly conflicts with medical evidence)
 
 
 [3]
 As the Court indicates, the Secretary only discounted Dr. Starr's conclusion that Hays was disabled. So far as the record is concerned, the Secretary fully accepted Dr. Starr's finding that Hays suffered from a delusional disorder