959 F.2d 240
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James H. LACK, Plaintiff-Appellant,
v.
Louis W. SULLIVAN, M.D., Secretary of Health & Human
Services, Defendants-Appellees.
 No. 90-35645.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 9, 1992.*
Decided April 14, 1992.
 
 Before JAMES R. BROWNING, EUGENE A. WRIGHT and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Lack appeals the district court's dismissal of his complaint appealing the decision of the Secretary of Health and Human Services that Lack is not entitled to disability insurance or Supplemental Security Income (SSI). We affirm.
 
 
 3
 "In reviewing a district court's decision upholding the Secretary's denial of benefits, our review is essentially the same as that undertaken by the district court. We consider the district court's decision but the statutory scheme mandates a full review of the facts by our court and an independent determination as to whether the Secretary's findings are supported by substantial evidence." Young v. Heckler, 803 F.2d 963, 966 (9th Cir.1986) (internal citations omitted). Substantial evidence "means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted). This court will uphold the decision of the Secretary if the Secretary applied the proper legal standard and there is substantial evidence supporting the decision. Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir.1990).
 
 
 4
 Lack seeks benefits for the period from January 1, 1984 on. Although he has not previously sought benefits for this period, he applied and was rejected for disability insurance in October 1976, July 1979, and April 1980. These decisions create a presumption that Lack was able to work beyond the date of the last denial. Brawner v. Sec. of Health and Human Services, 839 F.2d 432, 433 (9th Cir.1988). In order to overcome this presumption, Lack has the burden of showing that his impairments have become more severe since April 1980. Id. In meeting this burden, Lack must make a showing that the worsened conditions are such that he cannot perform his previous occupation. Clem, 894 F.2d at 330. The ALJ found that Lack has failed to meet his burden of demonstrating that he could no longer function as a research attorney.
 
 
 5
 Lack first argues that this determination was based on an erroneous finding by the ALJ that Lack's hypertension was controllable. The actual finding of the ALJ was that Lack's "hypertension, while occasionally uncontrolled, has not manifested itself in any significant physical restrictions...." This finding is supported by substantial evidence. Dr. Lang found that Lack's hypertension precluded only "strenuous activity--i.e. no heavy lifting, running, or climbing." Dr. Mayer reported that Lack's hypertension was "poorly controlled and clearly ha[d] an emotional component." Nonetheless he did not find the condition to represent a significant risk as long as the blood pressure rise was not "excessive." The ALJ's finding provides the specific, legitimate reasons why he rejected the opinion of Dr. Archer, the treating physician. See Bunnell v. Sullivan, 912 F.2d 1149, 1152 (9th Cir.1990).
 
 
 6
 Lack argues that the ALJ's determination that Lack's testimony concerning headaches and lack of concentration was not credible was not supported by substantial evidence. As to the headaches, Lack admits that there was no testimony indicating the severity of the headaches or their effect. It is therefore evident that the ALJ was not obligated to make a finding explaining his rejection of Lack's claims of headache. See Vincent ex rel. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir.1984) (Secretary need not discuss all evidence presented, she merely must explain why she rejected "significant probative evidence").
 
 
 7
 With regard to Lack's inability to concentrate, the ALJ acknowledged that there was evidence indicating an inability to concentrate. However, there was also evidence that Lack's ability to concentrate was not significantly diminished. See, e.g., May 5, 1986 Mental Residual Functional Capacity Assessment; March 24, 1986 Mental Residual Functional Capacity Assessment. The ALJ also pointed to Lack's daily routine, which involves reading the newspaper and playing cards, activities that indicate an ability to concentrate. It is the role of the ALJ to resolve conflicting evidence. Vincent, 739 F.2d at 1395. Although not overwhelming, we agree with the district court that there is substantial evidence to support a finding that Lack's concentration is not significantly impaired.
 
 
 8
 Lack argues that the ALJ failed to take note of the increasing severity of his alcoholism. Although the ALJ noted in his findings that Lack had been described as a "binge alcoholic," Lack now argues that his condition is chronic. Assuming that the evidence supports a finding of chronic alcoholism, the ALJ was obligated to make a finding as to whether the alcoholism can be controlled or whether it is disabling. Clem, 894 F.2d at 331. Here, the ALJ specifically found that Lack could control his drinking because he had done so at other relevant times in his adult working life. Although we agree with the Magistrate that this is a close question, we also agree that there is substantial evidence to support the ALJ's finding that the condition was controllable in that Lack was able to work in 1979, 1980, 1981, and 1983, even though he was abusing alcohol during these years.
 
 
 9
 Next, Lack argues that the ALJ erred in disregarding the testimony of the expert witnesses, Drs. Bottrell and Bissey. Although the ALJ did appear to take a less grim view of the level of impairment suffered by Lack than did Bottrell, he did not disagree with her ultimate conclusion that Lack could handle employment that involved "self-paced" research.
 
 
 10
 The ALJ rejected Bissey's assessment that there were no jobs that Lack could perform in either the Alaskan economy or the national economy. An expert's opinion is not binding on the ALJ as long as he provides clear and convincing reasons for rejecting the opinion. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir.1984). Here, the ALJ specifically indicated that he believed that the vocational expert had taken an overly narrow view of Lack's ability to deal with other people. This appears to be a reasonable interpretation given that the expert seemed focused on identifying jobs that involved no contact with other persons, not just minimal contact. In any event, although we agree that the ALJ might have been more careful in formulating his hypothetical, the standard to which we must adhere is: was there substantial evidence in the record to support the ALJ's conclusion? Given the large amount of evidence to which the ALJ pointed, we find that there was sufficient evidence to support a finding that Lack is not disabled.
 
 
 11
 Lastly, Lack argues that the ALJ's finding that he could function as a research attorney was in conflict with an earlier finding on this application. However, the ALJ is not bound by any prior determinations. See 20 CFR § 416.1446(a).[1]
 
 AFFIRMED.[2]
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to 9th Cir.R. 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In his reply brief, Lack argues that the ALJ should have referred to the Dictionary of Occupational Titles. However, Lack points to no authority indicating that the ALJ must consider this document
 
 
 [2]
 Appellee's motion to strike Appellant's Excerpts of Record is denied