**Kathleen BARNARD, Plaintiff—Appellant,**

v.

**COMMISSIONER OF the SOCIAL SECURITY ADMINISTRATION, Defendant—Appellee.**

No. 06–35507.

United States Court of Appeals, Ninth Circuit.

Submitted May 9, 2008.*

Filed July 24, 2008.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

Tim Wilborn, Wilborn Law Office, PC, Oregon City, OR, for Plaintiff–Appellant.

David Robert Johnson, Assistant Regional Counsel, Social Security Administration Office of the General Counsel, Seattle, WA, for Defendant–Appellee.

Before: TALLMAN and CLIFTON, Circuit Judges, and CARROLL **, District Judge.

MEMORANDUM ***

Kathleen Barnard appeals the district court's decision affirming the Social Security Commissioner's decision that she was not disabled within the meaning of the Social Security Act and was ineligible for benefits. We affirm.

We review de novo the district court's order affirming the administrative law judge's denial of benefits. *Lewis v. Apfel,* 236 F.3d 503, 509 (9th Cir.2001). The agency's decision must be affirmed if it was supported by substantial evidence and

---

** The Honorable Earl H. Carroll, Senior United States District Judge, District of Arizona, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

based on the application of correct legal standards. *See Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).

■ We reject Barnard's argument that the ALJ erred by not further developing the record of her psychological and mental impairments. The ALJ's duty to develop the record fully is triggered when there is ambiguous evidence or when the record is inadequate. *See Mayes v. Massanari,* 276 F.3d 453, 459–60 (9th Cir.2001). The record for evaluating the claimant's mental condition during the relevant period was adequately developed by an initial hearing and upon the stipulated remand from the district court. Barnard's psychological problems were not diagnosed until five years after the date last insured.

■ Barnard also argues that the ALJ erred in rejecting a treating physician's conclusions drawn nine months after the date last insured. We disagree. An ALJ should ordinarily give great weight to a treating physician's findings in disability cases. *See Batson,* 359 F.3d at 1195 (citing *Tonapetyan v. Halter,* 242 F.3d 1144, 1149 (9th Cir.2001)). When these findings conflict with the opinion of other doctors, however, the ALJ may reject the testimony so long as he provides "specific and legitimate reasons that are supported by substantial evidence." *See Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005); *see also Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir.1995) (holding that clear and convincing reasons are not required to reject contradicted conclusions of a treating physician). The ALJ pointed to inconsistencies in the doctor's opinion, her reliance on Barnard's subjective complaints, and clinical observations of two prior physicians that did not corroborate the doctor's conclusion. The ALJ is responsible for resolving conflicts and ambiguity in medical evidence. *See Lewis,* 236

F.3d at 509. He has done so here; we will not substitute our judgment for his. *See Reddick v. Chater,* 157 F.3d 715, 720–21 (9th Cir.1998).

■ The ALJ's determination that Barnard was not credible was supported by "specific, clear and convincing reasons." *See Lingenfelter v. Astrue,* 504 F.3d 1028, 1036 (9th Cir.2007) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996)). The ALJ cited Barnard's reported lack of cooperative effort during physical evaluations as a reason to reject her testimony. This is a sufficient reason. *See Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir.2002). Furthermore, the ALJ concluded that Barnard's husband and a long-time friend testified to a level of debilitation that could not be supported by medical evidence. This is a valid reason for rejecting lay witness testimony. *See Lewis,* 236 F.3d at 511; *see also Vincent ex rel. Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir.1984) ("Although courts have upheld the use of lay testimony in some instances, it is not the equivalent of medically acceptable diagnostic techniques that are ordinarily relied upon to establish a disability.") (internal quotation marks and citations omitted).

■ Contrary to Barnard's argument, the ALJ's hypothetical question to the vocational expert was based on medical assumptions that reflected the claimant's limitations. *See Roberts v. Shalala,* 66 F.3d 179, 184 (9th Cir.1995). Barnard argues that the ALJ neglected to include limitations relating to an injury received a decade prior to the date last insured or her perceived limitations based on subjective measures of pain and fatigue. We find no error in these omissions.

■ Finally, the ALJ did not err when he failed to determine a date of disability onset. This must be done only after a claimant is found disabled. *See Crane v.*

*Shalala,* 76 F.3d 251, 255 (9th Cir.1996). The ALJ did not need to determine an onset date because the ALJ properly concluded that Barnard was not disabled at the last date insured, and that conclusion was supported by substantial evidence.

**AFFIRMED.**

CARROLL, Judge, dissenting:

Because the Administrative Law Judge's ("ALJ") rejection of Barnard's treating physician's opinion and adverse credibility findings of Barnard and her husband were error, I respectfully dissent.

### *Rejection of Treating Physician's Opinion*

The Majority finds that the ALJ's rejection of the treating physician's opinion was supported by substantial evidence in the record for the following reasons: the treating physician's opinion was inconsistent; clinical observations of two prior physicians did not corroborate with those of the treating physician; and the treating physician relied on Barnard's subjective complaints.

### A. The treating physician's opinion is not inconsistent.

In December 1998, Kimberly Goslin, M.D., Ph.D., an Assistant Professor of Neurology at the Oregon Health Sciences University in Portland, began treating Plaintiff. According to Dr. Goslin, Barnard's MRIs, performed at the University, showed "significant abnormalities ... which can certainly explain many of her complaints," and her "pain makes it difficult to perform a good motor examination ..." Contrary to the ALJ's assertion, Dr. Goslin's opinion describing Barnard as *"currently* fully disabled" does not contradict her qualification that she had not yet completed her evaluation and could not make recommendations regarding *long term* disability.

The ALJ questioned how Plaintiff was unable to walk beyond a few feet without excruciating pain, and how her reported symptoms of upper extremity numbness, weakness, and pain corresponded with the MRI findings. In response, Dr. Goslin cautioned she "generally prefer[s] not to be involved in disability issues regarding patients [she] is treating, especially when the chief complaint is pain which is so difficult to quantitate and prove."[1] She noted that Plaintiff has a history of fibromyalgia and multiple traumas; MRIs that show "significant abnormalities in the cervical [spine] consistent with her symptoms"; and low back and leg pain which she believes is musculoskeletal and "perhaps related to her fibromyalgia." Dr. Goslin observed that "[m]usculoskeletal pain can be quite severe and chronic," and "strongly recommended a physical therapy and rehabilitation program" along with "anesthesia pain service treatment." The doctor *reiterated* her opinion that Plaintiff is "currently disabled by her pain, but if there is continued doubt, it might be worthwhile to have a fibromyalgia expert evaluate her." Contrary to the ALJ's assertion, Dr. Goslin's letter does not represent a retreat from her first opinion. Dr. Goslin has not been inconsistent.

### B. Other physicians did not provide independent clinical findings.

"By rule, the Social Security Administration favors the opinion of a treating

---

1. The ALJ specifically uses this statement to describe her reply as a "retreat." He disregards the SSA's own observation, which mirrors that of Dr. Goslin: "Because symptoms, such as pain, *are subjective and difficult to* *quantify,* any symptom-related functional limitations" reported by claimant or others are taken into account if reasonably consistent with objective medical evidence. *See* 20 C.F.R. 404.1529(c)(3) (emphasis added).

physician over non-treating physicians." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.2007) (citing 20 C.F.R. § 404.1527). If a treating source's medical opinion is not well-supported by medically acceptable evidence or is inconsistent with substantial evidence in the record, it is still entitled to deference. *See Orn*, 495 F.3d at 632 (citing § 404.1527).

Two earlier treating physicians had diagnosed Plaintiff with fibromyalgia. In 1997, an examining physician described Plaintiff as an obese woman who demonstrated a consistent lack of effort. The ALJ relied on the examining doctor's observation of Barnard's "lack of effort" but omitted the doctor's finding that a "significant decreased quadriceps reflex" warranted an MRI scan,[2] and that the "diagnosis of fibromyalgia [ ] [was] the most likely explanation" of her neck pain.

To refute a treating physician's opinion and relegate it to less than "controlling weight," there must be "substantial evidence" in the record that reflects another doctor's conflicting opinion.[3] *Orn*, 495 F.3d at 632 (citing 20 C.F.R. § 404.1527(d)(2)). The ALJ must make findings setting forth specific, legitimate reasons for rejecting the treating physician's opinion. *See Lester v. Chater*, 81

F.3d 821, 830–31 (9th Cir.1995). With the exception of his observation that Barnard "demonstrated a consistent lack of effort," there is no evidence that the examining doctor contradicted Dr. Goslin's opinions. Even if he had contradicted her, Dr. Goslin's opinion would still control.

To establish "substantial evidence," the examining physician with a conflicting opinion must provide independent clinical findings.[4] When an examining physician relies on the same clinical findings and differs only in his conclusions, the examining doctor's conclusions are not "substantial evidence." *Orn*, 495 F.3d at 632. Here, the examining physician did not offer independent clinical findings that differed from those of Dr. Goslin: he agreed that Plaintiff had fibromyalgia, recommended further testing, did not offer different diagnoses, and did not rely on medical tests not relied upon by Dr. Goslin. Therefore, the examining doctor's opinion, assuming they conflicted with Dr. Goslin's, would not have constituted "substantial evidence."[5]

In addition, the ALJ rejected Dr. Goslin's opinion because it was provided nine months after Barnard's date last insured[6] had expired. This reasoning is improper: "[M]edical evaluations made after the expi-

---

**2.** The doctor recommended the MRI to ascertain if the decreased reflex was due to a disk herniation; however, it was not performed at that time because the SSA would not pay for it and Barnard did not have the funds or insurance to cover it.

**3.** There is no evidence that the previous treating physicians offered any opinions that contradicted those of Dr. Goslin.

**4.** "Independent clinical findings are either (1) diagnoses that differ from those offered by another physician and that are supported by substantial evidence; or (2) findings based on objective medical tests that the treating physician has not herself considered." *Orn*, 495 F.3d at 631 (citations omitted).

**5.** *If* the doctor had provided independent clinical findings that differed from Dr. Goslin's, it would have been considered "substantial evidence," and it is at this juncture that the ALJ would have had sole province to decide which of the conflicting opinions would control. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1042 (9th Cir.2007).

**6.** The "date last insured" is the last day of coverage based on a claimant's years of employment. In this case, Plaintiff's date last insured is March 31, 1998, and she must therefore establish disability status on and before that date.

ration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition." *Sampson v. Chater*, 103 F.3d 918, 922 (9th Cir.1996) (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir.1988)). In fact, it is not uncommon that a physician's examination completed two or more years after the insured status expiration date is considered relevant. *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir.1988) (citing several cases from other Circuits to support the court's conclusion). The record includes progressive worsening of Barnard's symptoms of degenerative disk disease such that Barnard eventually underwent an "anterior cervical discectomy and fusion at C5–6" in December 2003,[7] which further bolsters Plaintiff's claim of a disabling pre-expiration condition.

Despite case law to the contrary, the ALJ accorded "marginal" probative value to the more recent medical records because it was treatment five years after her date last insured. Moreover, the district court, in its remand, had ordered the update of medical records in February 2002, *four years* after Plaintiff's date last insured. It is fair to assume the court expected that the records would be considered regardless of the later time frame. Allocating such "marginal" probative value does not comport with the district court's order.

## C. The treating doctor did not rely primarily on Barnard's complaints.

Lastly, the ALJ found that "Dr. Goslin's conclusions were based in large part on [Plaintiff's] subjective complaints," which he found were not fully credible. This observation is misleading. Dr. Goslin based her opinion not only on Plaintiff's complaints but on her complete medical record (provided by the ALJ), the MRIs, and the doctor's physical examination of Barnard.

## *Adverse Credibility Findings*

## A. Rejecting Plaintiff's testimony was error.

"Pain of sufficient severity caused by a medically diagnosed anatomical, physiological, or psychological abnormality may provide the basis for determining that a claimant is disabled." *Robinson v. Barnhart*, 469 F.Supp.2d 793, 798 (D.Ariz.2006) (quoting *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.1997)) (inner quotations and citations omitted). It is undisputed that Plaintiff has at least two severe impairments, fibromyalgia and a 1991 status post left rotator cuff strain. Degenerative disk disease appears to be another significant, if not severe, impairment from the record overall.[8] Degenerative disk disease and fibromyalgia both can cause substantial pain.

"Moreover, once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain." *Robinson*, 469 F.Supp.2d at 798 (quoting *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir.2004)) (inner quotations, cita-

---

7. In 2002, Barnard was diagnosed with cervical and lumbar spine degeneration; in early September 2003, an MRI showed "paracentral disc protrusion," and later that month, another MRI showed "moderate diffuse spondylotic changes," "moderately severe spinal stenosis," and "disc and osteophyte protrusion." In October 2003, Plaintiff was diagnosed with "cervical myelopathy secondary to bilateral C5–6 disc herniation."

8. In fact, the ALJ focused primarily on Barnard's degenerative disk disease in his decision, rather than her fybromyalgia, which he tended to ignore in his analysis.

tions, and alteration omitted). Fibromyalgia was diagnosed by every doctor who treated or examined Barnard, and although not specifically diagnosed, every doctor who saw Barnard examined or treated her for spinal degeneration and disease. Therefore, Barnard's complaints of severe pain cannot be rejected simply because the severity of her pain is not fully corroborated by the objective medical evidence.

The ALJ found Plaintiff "not fully credible" because:

> 1) She has a long and consistent history of asserting extreme functional limitations for which objective findings are lacking; and
> 2) She demonstrated a consistent lack of effort during examinations.

As already noted, the ALJ cannot rely solely on the lack of objective medical evidence to fully corroborate the alleged severity of pain. Moreover, Dr. Goslin opined that Barnard was unable to fully participate in the examinations due to her pain, which arguably explains her lack of effort. Furthermore, "[u]nless the ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find the claimant not credible by making specific findings as to credibility and stating clear and convincing reasons for each." *Robinson*, 469 F.Supp.2d at 798 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir.2006)) (inner quotations and citation omitted).

The ALJ did not make a finding of malingering and his reasons to support the adverse credibility finding are not clear and convincing. Although Plaintiff has arguably made some statements which could impact upon her credibility, they do not support an adverse credibility finding. Given the complete record before the Court, Plaintiff's credibility does not support denial of her claim.

## B. Rejecting husband's and family friend's testimony was error.

Lay testimony about a claimant's symptoms is competent evidence which the ALJ must consider unless he gives reasons for the rejection that are germane to each witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir.1996). Plaintiff's husband testified that his wife was no longer able to do much of her previous activity, and that he did most of the household chores. The ALJ rejected this testimony for two reasons. First, the husband had "secondary financial interests" in assisting his wife to acquire benefits. This rationale contradicts our Circuit case law. Rejecting the testimony of family witnesses because they are biased would amount to a wholesale dismissal of any family member as a credible witness. *See Smolen v. Chater*, 80 F.3d 1273, 1289 (9th Cir.1996) ("The fact that a lay witness is a family member cannot be a ground for rejecting his or her testimony"). "To the contrary, testimony from lay witnesses who see the claimant every day is of particular value." *Smolen*, 80 F.3d at 1289. "Because symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, careful consideration must be given to any available information about symptoms." SSR 95–5p.

Second, the ALJ found that the testimony reflected observations of Plaintiff at the time the testimony was given rather than the earlier relevant time period. The ALJ also relied on this to reject the testimony of Plaintiff's friends. However, the husband's written statement, which parallels his oral testimony, was completed one year before Plaintiff's date last insured, and a friend's testimony referenced Plaintiff's symptoms "over the last two years." Additionally, testimony is frequently taken

after the date last insured due to a significant time lapse between the claim for benefits and the ALJ hearing.

The ALJ's reasons for rejecting the lay testimony are not applicable.[9]

### Conclusion

The decision denying benefits is not supported by substantial evidence. Specifically, the ALJ made unsupported credibility determinations of the Plaintiff and gave little weight to the opinion of Plaintiff's treating physician, who found Barnard was fully disabled. The ALJ did not adequately assess the entire record as a whole.

For the foregoing reasons, I would remand for payment of benefits.

---

9. The Majority's reliance on a 1984 case to affirm the ALJ's rejection of lay testimony is not persuasive. *See Vincent on Behalf of Vincent v. Heckler,* 739 F.2d 1393, 1395 (9th Cir.1984). The *Vincent* court offers a cursory observation that lay testimony is not equivalent to medical evidence, and at the same time acknowledges that the ALJ did not discuss the testimony in his decision.

