**Michelle MERILLAT, Plaintiff–Appellant,**

v.

**COMMISSIONER OF SOCIAL SE-CURITY ADMINISTRATION, Defendant–Appellee.**

No. 08–35880.

United States Court of Appeals, Ninth Circuit.

164

Submitted Oct. 9, 2009.*

Filed Oct. 30, 2009.

---

* This case was submitted for decision on the briefs and record without oral argument.

Fed. R.App. P. 34(a)(2).

Tim Wilborn, Wilborn Law Office, PC, Oregon City, OR, for Plaintiff–Appellant.

David M. Blume, Assistant Regional Counsel, SSA–Social Security Administration, Office of the General Counsel, Seattle, WA, Neil Evans, Assistant U.S., Britannia I. Hobbs, Assistant U.S., Office of the U.S. Attorney, Portland, OR, for Defendant–Appellee.

Before: O'SCANNLAIN and N.R. SMITH, Circuit Judges, and WHYTE,** District Judge.

MEMORANDUM ***

Michelle Merillat, a thirty-four year old individual with a high school education but no past relevant work experience, appeals the decision of the district court affirming the Commissioner of Social Security's final decision denying disability benefits to her under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.*, and § 1381, *et seq.* The ALJ found that Merillat was capable of performing work that exists in substantial numbers in the national economy and thus that she was not disabled.

In her appeal, Merillat argues that the ALJ erred: (1) in finding her not credible; (2) in rejecting the testimony of the lay witnesses; (3) in formulating an improperly vague residual functional capacity determination; (4) in rejecting the testimony of counselor Patricia Thompson; and (5) in not giving significant weight to the opinion of examining psychologist Jane Starbird, Ph.D., expressed in her March 20, 2005 assessment. We are not persuaded that Merillat's claims of error have merit and find that the ALJ's decision is supported by substantial evidence.

■ First, the ALJ did not err in his findings concerning Merillat's credibility. He noted that despite Merillat's claim that her mental impairments made her unable to perform work activities, the record showed that her symptoms were controlled with medication and that when she was compliant, her limitations ranged consistently from mild to moderate. The ALJ also found that Merillat's current activities

---

** The Honorable Ronald M. Whyte, United States District Judge for the Northern District of California, sitting by designation.

*** This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

were inconsistent with her claimed level of limitation. He specifically noted that, despite her claims of social anxiety, Merillat worked part-time through 2003, lived independently and did her own grooming and hygiene, cared for and home-schooled her son, performed household chores, prepared meals, ran errands, took walks, and shopped for groceries (sometimes alone). The ALJ also noted Merillat's social relationships, which indicated that she was comfortable meeting and interacting with new people. The ALJ's conclusion that Merillat's ability to perform these daily activities was inconsistent with the level of limitation Merillat claimed, a legitimate ground upon which to discredit her testimony. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir.2008) (citing *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir.1996)), is supported by substantial evidence.

The ALJ's adverse credibility determination is further supported by evidence suggesting that Merillat was motivated by secondary gain, i.e., was malingering. Affirmative evidence of malingering supports an adverse credibility finding. *See Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir.2006). The ALJ cited the observations of the counselor who treated Merillat, observed Merillat's behavior, and expressly noted that Merillat's "primary goal at this point would be to obtain social security disability, and it may be that improved functioning would not be seen as making progress toward that goal." These observations by a treating counselor reasonably support an inference that Merillat was not motivated to work as opposed to collect benefits.

■ Second, Merillat argues that the ALJ committed error when he rejected the lay witness testimony of Sharon Shiel and April Denkers, because neither was trained to critically evaluate whether Merillat's complaints were exaggerated or inconsistent with objective evidence and neither had demonstrated vocational expertise. The ALJ rejected their testimony that Merillat was unable to do work primarily due to Merillat's excessive worrying, obsessive-compulsive behaviors, social phobia and depression. The ALJ should have considered this lay testimony to the extent that it was offered to show the severity of Merillat's impairment and how that impairment affected her ability to work. *See Bruce v. Astrue*, 557 F.3d 1113, 1115–16 (9th Cir.2009) ("The ALJ [is] required to consider and comment upon competent lay testimony, as it concerned how [claimant's] impairments impact [her] ability to work."). However, any error was harmless as the ALJ noted that the testimony of Shiel and Denkers suggested that Merillat did well on the job and engaged in daily activities that were full-ranged and independent. The ALJ also pointed out that there was more reliable evidence in the record from examining medical professionals, which is an acceptable reason for rejecting lay testimony. *See Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir.2001) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984)).

■ Third, the ALJ did not err in his formulation of Merillat's residual functional capacity. Merillat seizes upon a single phrase from the residual capacity assessment finding as a whole—that Merillat's "competence and productivity at the work site is variable"—and argues that the entire residual functional capacity assessment was impermissibly vague. This phrase, however, came directly from Dr. Starbird's January 2005 medical source statement. Moreover, all of the limitations found by the ALJ were presented to the vocational expert, who determined that a person with those limitations could work as a library clerk, small-products assem-

bler, or laundry folder. The inclusion of the assessment that Merillat's competence and productivity at the work site "is variable" did not render the overall residual functional capacity assessment vague or incomprehensible. The vocational expert had no difficulty understanding the assessment when presented with it at the hearing and was able to testify regarding the jobs within the national economy that could be performed by someone with those limitations and having claimant's age, education, and work experience.

█ Fourth, the ALJ's rejection of the opinion of Patricia Thompson, a supervising counselor, was not error. Thompson's opinion was based on a single meeting that Merillat had with another counselor. Thompson opined that Merillat exhibited debilitating anxiety and recommended that she be granted disability benefits, which would enhance her opportunity to engage in therapy for treatment. Under the regulations, Thompson qualifies as an "other source," rather than an "acceptable medical source." 20 C.F.R. §§ 404.1513(d), 416.913(d). As such, the ALJ is to evaluate her testimony based on such factors as how often she saw the claimant and the consistency of her opinion with other evidence in the record, and the ALJ may give more weight to opinions from acceptable medical sources. SSR 06–03p. While the ALJ did not expressly state the weight, or lack of weight, he was giving to Thompson's opinion, he properly considered her limited ability to observe Merillat and was entitled to give greater weight to other evidence in the record, including opinions from acceptable medical sources.

█ Finally, Merillat contends that the ALJ erred in discounting the March 2005 opinion of examining psychologist Jane Starbird, Ph.D. Dr. Starbird provided two written opinions, a January 2005 Comprehensive Psychodiagnostic Exam/Report on the Agency-supplied form, and a March 2005 "Medical Source Assessment (Mental)" on a form questionnaire supplied by Merillat's counsel. The ALJ gave significant weight to Dr. Starbird's January 2005 opinion but did not give significant weight to her subsequent March 2005 opinion.

The ALJ gave several reasons for disregarding the March 2005 assessment opinion, including that he found the counsel-provided form to be misleading, slanted towards dysfunction, and biased by counsel's payment to Dr. Starbird for the assessment. These reasons for disregarding Dr. Starbird's March 2005 opinion are not persuasive. The form does not appear slanted, nor does the fact that counsel paid Dr. Starbird a modest fee for completing the questionnaire suggest, by itself, that her opinion was colored by the payment. Nevertheless, there is substantial evidence that supports the ALJ's rejection of Dr. Starbird's March 2005 opinion in favor of her January 2005 opinion.

Generally, Dr. Starbird's two assessments are more similar to each other than they are different, but the differences are material. Based on the capacity assessments contained in Dr. Starbird's January 2005 assessment, the vocational expert testified that there were at least three different jobs existing in significant numbers in the national economy that a person of Merillat's age, education, and work experience could perform. When presented with the capacity assessments contained in Dr. Starbird's March 2005 assessment, however, the vocational expert testified that she would not be able to do any substantial gainful activity within the national economy. The ALJ was thus faced with somewhat conflicting capacity assessments by the same examining psychologist, the conflicts being significant enough to cause the vocational expert to express different opin-

ions on the availability of jobs that Merillat could perform.

Faced with inconsistent medical opinions, the ALJ had the responsibility to resolve the conflict. It was neither erroneous nor unreasonable for the ALJ to resolve the conflict by adopting the January 2005 assessment and its accompanying six-page narrative report, which was also consistent with other medical evidence in the record. Accordingly, the ALJ did not err in doing so.

**AFFIRMED.**

---

\* The Honorable Ann Aldrich, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

\*\* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.