**Wyatt Q. SMITH, Plaintiff–Appellant,**

**v.**

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant–Appellee.**

**No. 87–4117.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 11, 1988.

Decided June 20, 1988.

Before TANG and CANBY, Circuit Judges, and TAKASUGI,[*] District Judge.

TANG, Circuit Judge:

Wyatt Q. Smith appeals the district court's order affirming the Secretary's decision that Smith's seizure disorder was not of disabling severity on the date his insured status expired, September 30, 1976. The Administrative Law Judge (ALJ) found that Smith was disabled prior to September 30, 1976, but the Appeals Council reversed that finding because of a lack of detailed medical records documenting the seizures from 1972, when Smith last worked, through 1976. Smith contends that the Appeals Council erred in three respects: it ignored evidence establishing his earlier disability from physicians who treated Smith after 1976, it reversed the ALJ's findings on Smith's credibility without giving a reason, and it failed to consider the record as a whole, including lay testimony. We reverse.

## BACKGROUND

Wyatt Smith, who worked as a computer graphics systems analyst, last engaged in substantial gainful employment on March 15, 1972 and he last met the financial eligibility requirements for social security coverage on September 30, 1976. He was 26 when he last worked and 40 years old at the time of his hearing before the ALJ. The basis for Smith's claim of disability is epilepsy-like seizure episodes, the cause of which is still unknown.

Smith experienced his first seizure in 1965 when he was 19 years old. It was a grand mal seizure during which he collapsed at the dinner table and then onto the ground, with accompanying convulsions, tongue chewing, and other classic grand mal seizure symptoms. These epileptic grand mal seizures occur two to four times per year but seem to be controlled by Di-

Bradford G. Moore, Leen & Moore, Seattle, Wash., for plaintiff-appellant.

Kathryn A. Majnarich, Asst. Regional Counsel, Dept. of Health and Human Services, Seattle, Wash., for defendant-appellee.

---

[*] Honorable Robert M. Takasugi, United States District Judge, Central District of California, sitting by designation.

lantin, which was prescribed at the onset of this problem in 1965.

In addition, Smith experiences a second type of seizure which began at about the same time and which is the basis of his disability claim. He had these seizures two or three times a month with increasing frequency until, in 1972 when he last worked at his occupation, he was having approximately 200 seizures per year. They occur in clusters so that Smith has between one and three seizures daily for several days, then has no seizures for two to four weeks. These seizures have continued at approximately this frequency from 1972 until the present.

Although Smith's physicians have never diagnosed the exact cause of these seizures, and at the time of the hearing he and his physicians believed that the seizures were occasioned by vascular collapse and shock, the seizures exhibit the signs and symptoms of petit mal epileptic seizures. These seizures typically manifest themselves through facial pallor with blue lips, excessive facial and upper body perspiration, a roaring and ringing in his ears, and a loss of consciousness or a frozen feeling during which Smith can perceive the world around him, but is unable to talk or otherwise communicate. During these seizures, Smith frequently suffers convulsions of up to 30 seconds in duration, and is left in a mentally confused state for many hours afterwards. Because of these seizures Smith claims that he is unable to perform any work.

The only medical records available covering the time period in question (1972–1976) are from Norman Murphy, M.D., Smith's family physician who is now deceased. Doctor Murphy treated Smith from infancy and saw him for a variety of ailments and problems not related to the seizures, and he did not specifically record the seizure episodes Smith suffered during this time. Dr. Murphy's office notes show that he treated Smith with Dilantin, Valium, phenobarbital and seconal between 1965 and 1978, and in 1978 Dr. Murphy noted that Smith had convulsions after meals, assessed as petit mal seizures.

Other medical evidence includes reports from John Chapman, M.D., a neurologist who first saw Smith on June 18, 1979. Dr. Chapman performed an EEG that was abnormal and consistent with a clinical history of convulsions. Tests performed at Harborview Medical Center in 1983 ruled out food as a cause of Smith's symptoms and indicated that his spells were not secondary to hypoglycemia, dumping syndrome or to hypotension. Daniel Kohli, M.D., and David Robertson, M.D., saw Smith in 1985 and both concluded that he had a disabling impairment, but that they did not know its cause.

In addition to this medical evidence Smith submitted a statement signed by his mother, two-long time neighbors, and his living partner, Constance Smith. Their statement indicates that they have witnessed many of his episodes, that the estimate of 200 episodes per year is conservative, and that his disorder appears exactly the same in 1986 as it did 15 years ago.

The ALJ found that Smith's condition, from March 15, 1972 through the date of the hearing on February 12, 1986, met the specific requirements set out in the Social Security regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1, sections 11.02 (epilepsy—major motor seizures) and 11.03 (epilepsy—minor motor seizures). The Appeals Council, on its own motion, reviewed the decision of the ALJ. The Council concluded that lack of detailed notations in Dr. Murphy's notes was sufficient for it to determine that the frequency and severity of seizures during this time period were not as testified to by Smith, and that, therefore, his testimony was not credible.

## DISCUSSION

The scope of review of disability determinations is limited and this court disturbs the Secretary's decision only if it is based on legal error or if the fact findings are not supported by substantial evidence. 42 U.S. C. § 405(g); *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir.1987). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Howard v. Heck-*

*ler*, 782 F.2d 1484, 1487 (9th Cir.1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)). In assessing whether a finding is supported by substantial evidence, this court must consider the record as a whole. *Howard*, 782 F.2d at 1487 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 492–97, 71 S.Ct. 456, 467–69, 95 L.Ed.2d 456 (1951)).

## I. Substantial Evidence

■ On appeal Smith argues that the evidence supports a finding of disability under 20 C.F.R. Part 404, Subpart P, Appendix 1, section 11.03:

> 11.03 Epilepsy—minor motor vehicle seizures (petit mal, psychomotor, or focal) documented by EEG and by detailed description of a typical motor pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alternation of awareness or loss of consciousness and transient postictal manifestations or unconventional behavior or significant interference with activity during the day.

There is substantial medical and lay testimony to support the ALJ's original finding of disability.

When the record as a whole is reviewed, substantial evidence does not support the Secretary's decision. The Appeals Council considered only the medical evidence supplied through Dr. Murphy's office notes and disregarded Smith's testimony, the affidavit of four lay people who had witnessed his seizures, and the reports of three other physicians who saw Smith after the expiration of his insured status in 1976. The district court affirmed the Secretary's decision, adopting the Magistrate's view that the only relevant evidence of Smith's condition between 1972 and 1976 was that contained in Dr. Murphy's notes, which did not support a finding of disability under the regulations.

■ The district court and the Government rely on two cases for the proposition that evidence of disability occurring or increasing in severity subsequent to the expiration of plaintiff's insured status cannot have retroactive effect. *Waters v. Gardner*, 452 F.2d 855, 858 (9th Cir.1971); *Fyfe v. Finch*, 311 F.Supp. 552, 557 (W.D.Pa. 1970). *Waters*, 452 F.2d at 858, merely states that in a case of back injury and disc disease, "[a]ny deterioration in her condition subsequent to [the date of her last coverage] is, of course, irrelevant." *Fyfe*, 311 F.Supp. at 557, holds that "[e]vidence of a disability *occurring* subsequent to the expiration of the plaintiff's insured status cannot have retroactive effect" (emphasis added).

We think it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability. *Kemp v. Weinberger*, 522 F.2d 967, 969 (9th Cir.1975). It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis. *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir.1985).

There is considerable authority in the Eighth, Eleventh, Fourth, Second and Seventh Circuits that supports our conclusion, that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition. *See Parsons v. Heckler*, 739 F.2d 1334, 1340 (8th Cir.1984); *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir.1984) (in a claim based on diabetes medical evidence of condition subsequent to expiration of insured status is relevant because it may bear upon the severity of condition before expiration); *Poe v. Harris*, 644 F.2d 721, 723 n. 2 (8th Cir.1981) (in a case of disabling back pain evidence subsequent to last date of eligibility "is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date"); *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983) (that a doctor did not examine the claimant until two years after the expiration of her insured status and then rendered an opinion about an injury which occurred five years earlier "does not render his medical opinion incompetent or irrelevant to the decision in this case"); *Wooldridge v. Secretary of HHS*, 816 F.2d

157, 160 (4th Cir.1987) (medical evaluations made two years subsequent to expiration of insured status are not automatically barred from consideration and may be relevant to prove a previous disability); *Cox v. Heckler*, 770 F.2d 411 (4th Cir.1985) (same); *Branham v. Heckler*, 775 F.2d 1271 (4th Cir.1985) (same); *Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir.1981) (a diagnosis even several years after the actual onset of the impairment is entitled to significant weight); *Stark v. Weinberger*, 497 F.2d 1092, 1097 (7th Cir.1974) (same); *McGee v. Bowen*, 647 F.Supp. 1238, 1249 (N.D.Ill. 1986) (evidence and diagnoses from many years after the expiration of insured status are both admissible and relevant); *Hartman v. Bowen*, 636 F.Supp. 129, 132 (N.D. Cal.1986) (although plaintiff has to establish that disability existed prior to the expiration date she is "not confined ... to evidence in existence prior to that date").

If the reports from Dr. Chapman, Dr. Kohli and Dr. Robertson are considered as evidence of Smith's condition during the critical years, it is clear that substantial evidence does not support the Secretary's decision. While it is true that contemporaneous notes from Smith's treating physician for unknown reasons did not indicate the frequency of seizure episodes that Smith claims he had, we think the lack of documentation is explained by the fact that Smith was not seeing Dr. Murphy for his seizures, and by the fact that Dr. Murphy's office notes are generally rather sketchy. During the years in question, Dr. Murphy's notes indicate that Smith sought treatment for a severe sore throat in November 1972, for diarrhea in May 1974, for build-up of ear wax in July 1974, and for hay fever and allergic reactions to dust in September 1976. The absence of references to the seizures does not weigh as heavily as the medical and lay testimony as to their frequency and severity.

## II. Credibility

 The Appeals Council found that "claimant's contentions regarding the frequency and the severity of his seizures are not supported by clinical findings, and are not credible to the extent alleged." Al-

though the ALJ's credibility findings are not binding on the Appeals Council, this court has said that the Council must state its reasons for rejecting those credibility findings and its reasons must be based upon substantial evidence in the record. *Howard*, 782 F.2d at 1487. If the whole record is considered there is no basis for doubting Smith's credibility. We note that we find the credibility of Smith's current statements enhanced by the fact that his report of his condition to a treating physician in 1979, 6 years before he made a claim for disability benefits, is virtually identical to reports he made to physicians in 1985, the year he first sought benefits.

## III. Lay Testimony

 The Appeals Council briefly summarized the evidence presented by Smith's mother, two long-time neighbors and his living partner of 12 years, but it gave no reason for disregarding it. In *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir.1987), this court noted that "[d]escriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." Further, the court stated that "[d]isregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. § 404.1513(e)(2)." *Id.* Under this standard, the testimony of those who lived with or saw Smith on a daily basis should have been weighed in the assessment of the frequency and disabling effects of his seizure episodes.

The decision of the district court is *REVERSED* and the case is *REMANDED* for a determination of the benefits due from the onset of disability on March 15, 1972.