902 F.2d 1565
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
William R. LONG, Plaintiff-Appellant,
v.
U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, Richard S.
Schweiker, Secretary, Defendant-Appellee.
 No. 88-3651.
 United States Court of Appeals, Fourth Circuit.
 Submitted Nov. 27, 1989.
Decided May 1, 1990.
 
 Appeal from the United States District Court for the Western District of Virginia, at Big Stone Gap. Glen M. Williams, Senior District Judge. (C/A No. 82-448-B)
 William R. Long, appellant pro se.
 E. Montgomery Tucker, Office of the United States Attorney, Roanoke, Va., for appellee.
 W.D.Va.
 VACATED AND REMANDED.
 Before WIDENER, CHAPMAN and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 William Long appeals from the district court's order affirming the decision of the Secretary of Health and Human Services denying his claim for disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. Secs. 416(i) and 423. For the reasons developed below, we vacate and remand for further proceedings.
 
 
 2
 Long first applied for benefits in September 1981, claiming he suffered from a seizure disorder, anxiety, and depression. His claim was denied initially and upon reconsideration. Long then received several hearings on his claim. The first administrative law judge (ALJ) found Long was not entitled to benefits; however, the second ALJ to hear the claim found that Long's impairments were severe enough to meet the requirements of Paragraph 12.04, App. 1, Subpart P of Regulations No. 4. Although the Appeals Council disagreed with this finding, because of a broadening in the regulations of the requirements for a showing of impairment, it remanded the case for consideration by yet another administrative law judge. After the third hearing, the ALJ ruled that Long was not under any disability as defined by the Social Security Act, that the alleged severity of his complaints was not borne out by objective evidence in the record, and that he had the residual functional capacity to perform his past relevant work. The Appeals Council adopted this decision as the final decision of the Secretary, and it is this ruling which was affirmed by the district court and is now being appealed.
 
 
 3
 The Appeals Council's findings constitute the final decision of the Secretary of Health and Human Services and must be upheld on appeal if they are supported by substantial evidence. Thomas v. Celebreeze, 331 F.2d 541, 543 (4th Cir.1964). In this case the Appeals Council adopted the recommendation of the third ALJ, and the order of the district court should be affirmed if that recommendation is supported by substantial evidence.
 
 
 4
 The third ALJ found that Long did not "have the symptomatology necessary objectively to meet the 'A' criteria of any of the mental impairments contained in the Listings of Impairments in the Regulations." He concluded that there was no objective evidence of Long's seizure disorder "since the only documentation contained in the evidence of record ... is the subjective statements made by the claimant." The only severe impairments found by this judge to be supported by objective medical evidence in the record were Long's low normal intelligence and loss of vision in his left eye. The ALJ also found that these impairments would not prevent Long from performing his past relevant work, and therefore he concluded Long was not disabled.
 
 
 5
 "The evaluation of disability on the basis of mental disorders requires the documentation of a medically determinable impairment(s) as well as consideration of the degree of limitation such impairment(s) may impose on the individual's ability to work and whether these limitations have lasted or are expected to last...." 20 C.F.R. Sec. 404, Subpt. P, App. 1, Listing of Impairments, Sec. 12.00 Mental Disorders. 20 C.F.R. Sec. 404, Subpt. P, App. 1, Sec. 12.07. "Each [relevant] diagnostic group ... consists of a set of clinical findings (paragraph A criteria), one or more of which must be met, and which, if met, lead to a test of functional restrictions (paragraph B criteria), two or three of which must also be met." Id. at Sec. 12.00. If Long's impairment was not of a severity to meet the criteria of the listings, but did constitute a severe impairment, then his residual functional capacity, which is similar to the "B" criteria in the listings, should have been thoroughly examined by the ALJ. 20 C.F.R. Sec. 404, Subpt. P, App. 1 Sec. 12.00(A).
 
 
 6
 Long's symptoms, as set forth by himself and his doctors, describe a somataform disorder.[1] Therefore the record must be examined to determine if it contains any medical signs or findings which would meet the "A" criteria for this disorder. If there is evidence that the "A" criteria may have been met, then we must determine whether there was also substantial contradicting evidence to support the ALJ's finding that they were not met.
 
 
 7
 A finding of a somataform disorder must be supported by medically documented evidence of (1) multiple physical symptoms beginning before age 30,[2] or (2) persistent nonorganic disturbance of vision, speech, hearing, use of a limb, or movement and its control, or (3) unrealistic interpretation of physical signs or sensations associated with the preoccupation or belief that one has a serious disease or injury. 20 C.F.R. Sec. 404, Subpt. P, App. 1, Sec. 12.07(A). Long was observed by several physicians to be afraid of driving, falling, being alone, leaving home, and death. These fears show Long was preoccupied with the belief that he had a serious medical problem as required by the third criteria.[3] Whether Long's fears are an unrealistic interpretation of his physical symptoms is open to question. If Long does have a seizure disorder, then his fears are justified and may not satisfy the requirements for section (3) of the criteria. However, if this is true, then Long's seizures, for which no organic cause has been found, qualify to fulfill section (2) of the "A" criteria for a somataform disorder.[4]
 
 
 8
 Long's claims of a seizure disorder were discounted by the third ALJ because "the only documentation ... is the subjective statements made by the claimant." Not only did the ALJ fail to state why he found Long's testimony not to be credible,[5] but this statement is clearly erroneous. At all of Long's hearings there was sworn testimony by witnesses to several of Long's seizures. Additionally, Long's doctors believed he had seizures and gave him prescription medication in an effort to stop them, and Long's employer refused to let Long return to work until the seizures stopped. Although this is not medical evidence, it should not have been discounted.[6] We find that this is sufficient documentation to support the conclusions of Long's doctors that he suffered from seizures in light of the fact that such seizures would rarely occur in the presence of a doctor.
 
 
 9
 The ALJ emphasized that although his findings contradicted the diagnoses of Long's doctors, he was supported by the testimony of Dr. Hogan, a non-examining physician. Hogan's conclusion that there was no objective evidence to support Long's allegations of a psychiatric impairment was based upon a review of Long's medical records and Long's testimony at the third hearing. Hogan testified that he believed Long had only minor seizures, that Long's credibility was open to question because he was the only one who testified that he actually blacked out, and that such seizures should result in more substantiated reports of falls and injuries. Specifically, Hogan inferred that proof of actual blackouts was necessary to meet the "list" and that proof of falls, as a result of seizures, resulting in broken eyeglasses would be significant.
 
 
 10
 Although Hogan testified under the belief that only Long reported blackouts, actually Mitchell, Long's neighbor, reported observing them, as did Reese Scott, who worked with Long. At the third hearing Mitchell was primarily questioned about a recent shaking spell,[7] but he twice referred to having observed blackouts and stated that he no longer hired Long to do odd jobs because of the risk Long might hurt himself during a blackout. At the second hearing, however, Mitchell described in detail a blackout spell he had observed. Not only did Long fall off a bench, he also blew some sort of substance from his mouth. Mitchell also reported seeing Long fall down while walking and having to fix Long's glasses after several falls. Mitchell's testimony was not reviewed by Hogan because the record of the second hearing was not provided to him. Reese Scott testified at the first hearing that he observed a shaking spell and a spell in which Long passed out. Thus, the ALJ's reliance on Hogan's conclusions was misplaced in light of the fact that Hogan did not draw them based on all available evidence, and Hogan admitted on cross-examination that testimony such as Mitchell's and Scott's might significantly change his opinion.
 
 
 11
 Dr. Hogan's opinion was also given greater weight by the ALJ than was proper. A non-examining physician's opinion, such as Hogan's, can only serve as substantial evidence supporting denial of benefits if the medical testimony of examining and treating physicians goes both ways. Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir.1986). Every doctor who examined Long observed symptoms of a psychological disorder. Their reports, diagnosing different levels of disability and function impairment, show the progression of Long's illness rather than a disagreement between his doctors.[8] Therefore the opinion of a non-examining physician, such as Dr. Hogan, could not alone serve as substantial evidence to support the denial of disability benefits. Smith v. Schweiker, 795 F.2d at 345-46.
 
 
 12
 The third ALJ also gave undue consideration to the findings of doctors who gave Long purely physical examinations. The facts in the present case are similar to those in Mitchell v. Schweiker, 699 F.2d 185 (4th Cir.1983). In Mitchell every physician who examined the claimant concluded she suffered from severe depression and nervousness and her treating physician concluded that it would disable her for at least a year. Id. at 187. We noted in Mitchell that the Secretary placed excessive importance on the diagnosis of a general practitioner, as the disability was of a psychological rather than a physiological nature. Id. at 188. Similarly, in the present case, the third ALJ improperly placed great weight on the fact that no neurological or physical cause was found for Long's seizures.
 
 
 13
 For the foregoing reasons, we find that the record fails to show that the Secretary's findings and conclusions, as set forth in the third ALJ's recommendation, were supported by substantial evidence. Many of the findings and conclusions were unsupported or contradicted by the medical evidence. Indeed, the medical evidence shows that Long may have met the "A" criteria for a somataform disorder under the Listings.
 
 
 14
 The record also shows that the severity of Long's impairment under the "B" criteria and his ability to work was not examined by the third ALJ as required by regulations. See 20 C.F.R. Sec. 404.1520a(c)(3). As there was substantial evidence that Long could not continue his past employment, if, upon further examination, his impairment is found to have been severe under the "B" criteria, but does not otherwise meet the Listings, then Long's residual functional capacity and the availability of other employment for him also must be determined.[9]
 
 
 15
 For the foregoing reasons, we vacate the district court's order and remand this case for further consideration in light of this opinion. We dispense with oral argument because the facts and legal arguments are adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument.
 
 
 16
 VACATED AND REMANDED.
 
 
 
 [1]
 The reports of the numerous physicians who examined Long are contained in the record on appeal and need not be repeated here
 
 
 [2]
 Because Long was over 30 when he first exhibited symptoms, he does not meet this requirement.3 The ALJ also found that Long's limitations were self-imposed and not caused by emotional impairment. However, under section (3) of the "A" criteria for a somataform disorder, such self-limitation can be a visible, objective sign of impairment. Therefore the ALJ's conclusion that Long's limitations are insignificant because they might have been self-imposed is not supported by the medical evidence in the record
 
 
 [4]
 Dr. Hogan, who reviewed Long's claim at the request of the Appeals Council, described the seizures as psycho-motive, which would qualify to meet the "A" criteria
 
 
 [5]
 This Court has often held that ALJs have a duty to explain the basis of their credibility determinations, particularly where pain or other nonexertional disabilities are involved. Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir.1985), citing Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir.1984). See also Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir.1988)
 
 
 [6]
 The medical importance of interviewing witnesses to seizure episodes is well established. Disregard of evidence by friends and family members "violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work. 20 C.F.R. Sec. 404.1513(e)(2)." Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir.1988), citing Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir.1987). See also 20 C.F.R. Sec. 404, Subpt.P, App. 1, Sec. 12.00(D), regarding the importance of non-medical information obtained from family members and others with knowledge of the individual's functioning
 
 
 [7]
 At the third hearing Long was restricted to presenting new evidence to bring the case up-to-date
 
 
 [8]
 The reports show that as Long's illness progressed it increasingly interfered with his ability to function
 
 
 [9]
 Long's functional capacity was accorded little consideration by the third ALJ, and no testimony by a vocational expert was presented