15 F.3d 1082
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Christine BANKS, Plaintiff-Appellant,
v.
SECRETARY, DEPARTMENT OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 92-56084.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 31, 1994.*
Decided Feb. 3, 1994.
 
 Before: SNEED, THOMPSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Christine Banks appeals from the district court's grant of summary judgment affirming the Secretary of Health and Human Services' decision denying Banks's application for Title XVI supplemental security income benefits. Banks argues that the Administrative Law Judge (ALJ) erred in finding she was not disabled from her seizure disorder. We have jurisdiction, 28 U.S.C. Sec. 1291, and we affirm.
 
 
 3
 * Banks alleges an inability to work since November 18, 1989 due to a seizure disorder. The burden is on the claimant to establish disability. Sanchez v. Secretary of Health & Human Servs., 812 F.2d 509, 511 (9th Cir.1987). The claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. Sec. 1382c(a)(3)(A). The impairment must be of such severity that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. Sec. 1382c(a)(3)(B). In reviewing the Secretary's decision to deny benefits, we will affirm if substantial evidence supports the Secretary's findings and the proper legal standards were applied. 42 U.S.C. Sec. 405(g); Miller v. Heckler, 770 F.2d 845, 847 (9th Cir.1985).
 
 
 4
 Banks first challenges the ALJ's finding that her impairment did not meet or equal an impairment listed in appendix 1 of the regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1. Specifically, she contends that her seizure disorder meets Listing 11.02, "Epilepsy--major motor seizures." We disagree. Listing 11.02 requires the claimant to establish, by electroencephalogram (EEG) test results and other detailed evidence, that he experiences "major motor seizures (grand mal or psychomotor)" at least once a month, in spite of at least three months of prescribed treatment. The seizures must occur in the daytime and involve a loss of consciousness or convulsions, or at night with residuals that interfere significantly with daytime activities.
 
 
 5
 Banks has failed to demonstrate that her seizure disorder met Listing 11.02. The medical evidence generally refers to her seizures as partial complex or absence (petit mal) seizures, rather than grand mal or clonic-tonic seizures. One of her physicians noted on August 1, 1988 that her last clonic-tonic seizure occurred in 1976, and her last episode of unawareness occurred in 1985. By July 13, 1989, clinic notes indicated that Banks had experienced "no new seizures in the last couple of years" and that her seizure disorder was stable on Dilantin. Banks continued with "virtually none at all" until November 19, 1989, when she claimed that she had a car accident due to a seizure. Her claim that a seizure caused her accident was not medically confirmed, however. Indeed, the ALJ noted that Banks's driver's license was not suspended due to her seizure disorder, but rather because she was unable to prove financial responsibility after the accident.
 
 
 6
 The medical evidence was equivocal at best as to the frequency and seriousness of Banks's alleged seizures, and the extent to which they were controllable with the appropriate level of medication. In particular, the ALJ noted a number of inconsistencies between the seizures recorded on Banks's calendar and those she reported to her treating physicians. After her car accident, Banks was prescribed Phenobarbital in addition to Dilantin. While some seizure activity continued in the subsequent months, by June 12, 1990, her condition was considered to be stable. On September 6, 1990, it was reported that she had had no new seizures since July. Although Banks alleged renewed seizure activity thereafter until February 1991, Dr. Scheffer reported on August 15, 1991, in a letter submitted to the Appeals Council, that Banks had been prescribed Dilantin and Phenobarbitol and had not sought medical attention for seizures since the end of 1990.
 
 
 7
 Citing Smith v. Bowen, 849 F.2d 1222, 1226 (9th Cir.1988), Banks contends that the ALJ improperly disregarded the descriptions of her seizures given by several lay witnesses. The Secretary need not discuss all evidence presented to her, however; she must only explain why significant probative evidence has been rejected. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir.1984) (per curiam). In this case, the lay descriptions did not establish that Banks's seizures were of sufficient frequency and severity to meet Listing 11.02.
 
 
 8
 Banks also argues that the ALJ failed to follow the procedure set forth in an SSA program circular on the evaluation of epilepsy. The circular applies only to "major motor seizures." Because the record shows that Banks's seizures since the car accident have been partial complex or absence seizures, her reliance on the circular is misplaced.
 
 
 9
 We conclude that substantial evidence supports the ALJ's determination that Banks's seizure disorder did not meet or equal a listed impairment under the regulations.
 
 II
 
 10
 Banks next argues that even if her seizure disorder did not meet or equal a listed impairment, the ALJ nevertheless erred in finding that she was capable of performing the jobs identified by the vocational expert. She claims that the ALJ erroneously rejected the opinions of two treating physicians who stated that she was disabled. To reject a treating physician's uncontradicted opinion on the ultimate issue of disability, the ALJ must set forth clear and convincing reasons for doing so. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir.1989).
 
 
 11
 Here Dr. Mata stated on December 22, 1989 that he considered Banks to be disabled at that time. The ALJ properly rejected this isolated statement, which was made shortly after Banks's car accident when her condition was still being evaluated. Dr. Mata's later reports indicated that she was "doing quite well," and that her seizures were under control. Indeed, his May 11, 1990 report indicated that Banks had experienced only one seizure in the preceding five months. These reports did not suggest that Dr. Mata still considered her to be disabled.
 
 
 12
 The ALJ also properly rejected the gratuitous comment of the consulting opthamologist, Dr. Olenick, who opined that although he found Banks to be "full of pep," she would have difficulty obtaining and holding a job. This comment was unsupported by any medical findings and had nothing to do with the subject of the eye examination. Banks failed to establish the existence of any disabling visual impairment, and the vocational expert considered her visual limitations in suggesting jobs she could perform.
 
 
 13
 Banks's objections to the ALJ's vocational findings are without merit. Based upon all the evidence in the record, the ALJ found that Banks had a residual functional capacity for routine, unskilled, light work that did not involve heights or dangerous machinery, operating motor vehicles, exposure to extreme temperatures, fine or close visual work, or more than a superficial degree of interpersonal contact. The uncontradicted testimony of the vocational expert established the existence of a significant number of jobs in the economy that Banks could perform despite these limitations.
 
 
 14
 In short, the ALJ's finding of no disability is supported by substantial evidence. While it is undisputed that Banks suffers from a seizure disorder that is not entirely controlled with medication, the medical and vocational evidence of record established that this condition was not so severe as to preclude her from performing the modest requirements of the light and sedentary jobs identified by the vocational expert as appropriate for an individual with her limitations.
 
 
 15
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3