**Joyce R. SVATOS, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 98–631–AA.**

United States District Court, D. Oregon.

March 19, 1999.

· Alan Stuart Graf, Swanson, Thomas & Coon, Portland, OR, for plaintiff.

Kristine Olson, United States Attorney, District of Oregon, William Youngman, Assistant United States Attorney, Portland, OR, Renee C. McFarland, Special Assistant U.S. Attorney, Seattle, WA, for defendant.

## AMENDED OPINION AND ORDER

AIKEN, District Judge.

Pursuant to defendant's Motion to Correct Clerical Mistakes, (doc. 25), the court issues the following amended order.

Claimant, Joyce R. Svatos, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner. The Commissioner denied plaintiff's application for disability insurance benefits (DIB). For the reasons set forth below, the Commissioner's decision is reversed.

### PROCEDURAL BACKGROUND

Plaintiff first filed an application for disability and DIB on June 2, 1992, alleging disability since July 31, 1988, due to chronic fatigue syndrome and fibromyalgia. Tr. 12, 92–94, 103. The application was denied at the initial and reconsideration level. Tr. 96, 101, 102. Plaintiff filed another application for DIB on June 8, 1994, for the same alleged disability dating from July 31, 1988, due to chronic fatigue syndrome, fibromyalgia, ·severe ·headaches, loss of memory and concentration, night sweats, and loss of sleep. Tr. 14, 124. The ALJ reopened the previous application for ben-

efits for good cause. Tr. 12. Plaintiff's application was again denied, Tr. 139–142, as it was again upon reconsideration. Tr. 146–148. Plaintiff filed a timely request for a hearing. After the hearing, tr. 36–91, the Administrative Law Judge ("ALJ") determined that plaintiff was not disabled within the meaning of the Act. Tr. 12–19. 42 U.S.C. §§ 401–433. Plaintiff filed an appeal to the Appeals Council and submitted additional evidence that was entered into the record. Tr. 6. On March 23, 1998, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final agency decision. Tr. 4–5, 20 C.F.R. § 404.981. Plaintiff now seeks judicial review pursuant to section 205(g) of the Act, 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

■ This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen,* 879 F.2d 498, 501 (9th Cir.1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." *Martinez v. Heckler,* 807 F.2d 771, 772 (9th Cir.1986). The ALJ's decision must be upheld where the evidence is susceptible to more than one rational interpretation. *Andrews v. Shalala,* 53 F.3d 1035, 1039–40 (9th Cir.1995).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler,* 782 F.2d 1484, 1486 (9th Cir.1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected ... to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A).

■ The Secretary has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert,* 482 U.S. 137, 140, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); 20 C.F.R. § 404.1520. First, the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Yuckert,* 482 U.S. at 140, 107 S.Ct. 2287; 20 C.F.R. § 404.1520(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert,* 482 U.S. at 140–41, 107 S.Ct. 2287; *see* 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.; see* 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. *Yuckert,* 482 U.S. at 141, 107 S.Ct. 2287.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(e). If the claimant can work, she is not disabled. If she cannot perform past relevant work, the burden shifts to the Secretary.

In step five, the Secretary must establish that the claimant can perform other work. *Yuckert,* 482 U.S. at 141–42, 107 S.Ct. 2287; *see* 20 C.F.R. § 404.1520(e), (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. § 404.1566.

## BACKGROUND

The plaintiff appeared before the ALJ on May 16, 1996, Tr. 36–91, to appeal a denial of DIB benefits. At the time of the hearing, plaintiff was 62 years old, Tr. 12, 13, 92, with a twelfth grade education, one term of college and a twenty year work history as a legal secretary. Tr. 13, 58, 107. Plaintiff began work as a legal secretary in 1950 and worked on and off in that occupation until July 1988, her last month of employment. Tr. 44, 107. Between 1979 and March 1982, she developed low back pain and pain at the base of her spine. Tr. 199. The low back symptoms persisted through September 20, 1984. *Id.* In mid-July, 1984 she developed flu like symptoms with low fever, fatigue, generalized body pain and aching. Tr. 45, 200. On September 20, 1984, at the request of treating physician Luther Johansen, rheumatologist Dr. Gerald S. Schoepflin examined plaintiff and diagnosed her with:

1. Undifferentiated connective tissue disease with features suggestive of early possible rheumatoid arthritis and fibrositis;

2. Probable irritable bowel syndrome;

3. Tension headaches; and

4. History suggestive of simple partial seizures.

Tr. 202. He advised plaintiff to "avoid restarting work until feeling well for six months." *Id.*

On January 15, 1985, Dr. Schoepflin saw plaintiff again and noted that her "pain [was] pretty uncomfortable—about everywhere." Tr. 197. His diagnostic impression was:

1. Situational stress reaction;

2. Diffuse musculoskeletal pain, etiology not entirely clear. Possible undifferentiated connective tissue disease. No present evidence of fibrositis.

*Id.* He advised her to discontinue Sinequan, decrease her Valium dosage, begin Xanax, have her right knee x-rayed and return for a visit in three weeks. *Id.* On February 6, 1985, Dr. Shoepflin noted "aches and pains all over-unchanged." Tr. 196. His diagnostic impression was "ANA positive patient with generalized body pain, etiology not clear [and] situational stress disorder." *Id.* In 1988, Dr. Johansen continued to treat plaintiff for a variety of medical problems that included fibromyositis, pelvic pain, and headaches. Tr. 320.

On February 15, 1989, Dr. Johansen noted that plaintiff was gaining weight from Sinequan and "it is felt that she would benefit by being tapered off of it and placed on another medication for depression, rest and pain relief, chronic (headaches)." Tr. 319. On April 7, 1989, Plaintiff called Dr. Johansen complaining of flu symptoms and headaches. Tr. 318. On April 26, 1989, Dr. Johansen conducted a physical examination in which he noted that she continued to have flu symptoms and "generalized aches and pains, top of head painful." Tr. 318. Dr. Johansen felt that plaintiff still had a viral syndrome. Tr. 318. On May 26, 1989, Dr. Johansen noted that the plaintiff was still not improving and would try another medication for the severe pain. Tr. 317. On June 1, 1989, Dr. Johansen noted that plaintiff had continuing problems of viral flu syndrome, headache, fibromyositis and sinusitis. Tr. 317. Plaintiff continued to suffer ongoing pain and severe headaches through June 1989. Dr. Johansen referred plaintiff back to Dr. Schoepflin for review of possible "collagen" causation of symptoms. Tr. 317.

Plaintiff underwent a variety of diagnostic tests by Dr. Schoepflin. In a letter to Dr. Johansen dated July 6, 1989, Dr. Schoepflin noted that plaintiff's chief complaints included headaches and earaches, flu-like symptoms with aches in legs and arms, excessive fatigue from mild activity, "horrible pain" in right buttock in two-day spells about every 6 weeks, low grade fevers, severe sweating spells, insomnia and right knee aches continue. Tr. 190. Dr. Shoepflin's diagnostic impression was

headaches, low grade fever, fatigue, arthralgias of unclear etiology. *Id.* His differential diagnosis was: 1) Occult inflammatory bowel disease; 2) Chronic viral syndrome—chronic fatigue syndrome; 3) Undifferentiated connective tissue disease. 4) Depressive reaction. *Id.* This was the first time that a physician had diagnosed plaintiff with possible chronic fatigue syndrome (CFS).

On July 31, 1989, plaintiff was examined by Dr. William C. Schlippert, a gastroenterologist. Tr. 168–170. Upon examination, he found that plaintiff had "chronic current gastrointestinal symptoms that are primarily functional." Tr. 170. On August 17, 1989, on a referral from Dr. Johansen, plaintiff was examined by neurologist Ronald E. Mertens. Tr. 171. Dr. Merten's reports indicate that plaintiff's headaches have "increased since a flu-like episode in 2/89" and that "she still feels as though she has the flu and headaches." Dr. Merten's impression was that the plaintiff had tension headaches, ruling out the possibilities of acoustic neuroma and polymyalgia rheumatica. On August 23, 1989, an MRI produced normal findings. Tr. 174. On August 31, 1989, Plaintiff was examined by Dr. Greg Penner, an ear, nose and throat specialist. He found that plaintiff "had a fairly complex problem," and believes that she probably has significant rhinosinusitis with secondary eustachian tube dysfunction. Tr. 178.

On September 11, 1989, Dr. Johansen stated in a short letter that Plaintiff's diagnosis included 1) severe insomnia; 2) fibromyositis; 3) depression; 4) stress syndrome; 5) tension headaches; 6) chronic fatigue syndrome; and 7) undifferentiated connective tissue disorder.

On November 7, 1989, Plaintiff consulted with Dr. Johansen about her ongoing symptoms including fatigue and severe headaches. He concluded that her underlying virus problem is probably due to chronic fatigue syndrome. In April of 1990, Dr. Johansen's diagnosis included depression, chronic fatigue syndrome, and fibromyositis.

Plaintiff continued to see Dr. Johansen on a regular basis from May of 1990 through 1996 for fatigue, and pain and headaches that would wax and wane in severity. Plaintiff also consulted with other health professionals concerning her condition including psychologist Jim Johnson for a psychological profile. Tr. 307. His report is internally inconsistent, at one point describing her as an energetic woman, Tr. 211, and then later stating she has "low energy, never really gets herself going and although her organization is consistent, the overall pattern accumulation is poor." Tr. 214. The report also states "throughout her testing her cognitive functioning has evidence of both functional and organic basis for impairment. She has a kind of impotence and fragile cognitive organization that is often seen in patients who have metabolic disturbances and immune disorders such as would be associated with chronic fatigue syndrome." Tr. 216.

In regards to plaintiff's work history between 1982 and 1989, plaintiff did not work from 1982 to 1987 because she needed to assist her mother who had a stroke. Tr. 45. However, plaintiff was limited in what she could do by pain and fatigue. *Id.*

Plaintiff returned to work in September 1987 as a legal secretary. Tr. 45. She remained in the position for ten months. At the hearing, she testified that she had difficulty coping with the demands of the position and had a difficult supervisor. Tr. 46. She was required to learn three different word processing programs and was unfamiliar with computers. Tr. 46. She also testified that her fatigue would cause her to fall asleep at the computer and wake to see three lines of a letter on the screen, with her finger still on the keyboard. Tr. 47. In July 1988, plaintiff quit the position because of the stress from a boss who screamed and yelled at her. Tr. 48. Plaintiff also testified that due to her physical and mental problems her job per-

formance was unsatisfactory, and she would have had to leave the job regardless. Tr. 59.

On November 23, 1988, Dr. Johansen noted that "patient is doing well and is applying for a new job with the FBI." Tr. 319. The position was not forthcoming however. Tr. 67. Plaintiff has not worked since July, 1988.

## DISCUSSION

The plaintiff appeared before the ALJ on May 16, 1996 to appeal her denial of DIB benefits. The primary issue before the ALJ was whether the plaintiff was disabled as of December 31, 1989, her last date of disability insurance.

In evaluating the plaintiff, the ALJ recognized that plaintiff was diagnosed with fibromyalgia with numerous symptomatology (nausea with vomiting, a generalized aching a low grade fever, headaches, ear aches, pain in her right buttock, insomnia, sweating, right knee aches and stomach cramps), Tr. 15, which is considered a "severe" impairment as defined in 20 C.F.R. § 404.1520(c). The ALJ also found that the impairment did not meet or equal the criteria of any listed impairment under 20 C.F.R. § 404.1525. Tr. 15. He further concluded, based on the testimony of the Vocational Expert (VE), that the plaintiff did not have the residual capacity to return to her prior work as a legal secretary, Tr. 17, but the plaintiff could perform a variety of jobs that are sedentary and involve no more than average stress and average paced work. Tr. 17–18.

### A. Pain Testimony

The ALJ found the testimony of the plaintiff and her witness to be only partially credible.

 First, the ALJ concluded that "the objective medical evidence does not support the degree of severity alleged by the claimant." Tr. 16. However, if a claimant produces objective medical evidence of an impairment which could have reasonably caused some degree of the alleged symptom, and no evidence of malingering exists, the ALJ can reject the claimant's testimony regarding the severity of alleged symptoms only by offering specific, clear and convincing reasons for doing so. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996); *see also Bunnell v. Sullivan*, 947 F.2d 341, 345–346 (9th Cir. 1991); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.1986). Factors relevant to credibility of the claimant's testimony include the claimant's daily activities, failure to seek or follow a prescribed course of treatment, inconsistencies in the record, and relevant character evidence. *Bunnell*, 947 F.2d at 346.

 The ALJ provided no specific reasons for discrediting her testimony, nor did he review any of the factors listed above. Instead he relied on inconclusive medical tests that failed to show "objective medical evidence" regarding her condition. However, the challenge with CFS is that it is a "diagnosis of exclusion or ruling out other possible illnesses." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir.1998). In addition, the Program Operations Manual System ("POMS") guidelines on CFS issued by the Social Security Administration in 1993 states "that CFS . . . is a systemic disorder consisting of a complex of variable signs and symptoms which may vary in duration and severity. . . . Physical examination[s] may be within normal limits." POMS § DI 24575.005 (1993). In plaintiff's case, Dr. Johansen had followed her progress for several years, referred her to multiple specialists and conducted extensive lab testing to rule out other possible illnesses in 1989 Tr. 313–320, before concluding in September of 1989, that plaintiff suffered from C.F.S. Tr. 314. Dr. Schoepflin had reached the same diagnosis on July 6, 1989. Tr. 191. Consequently, contrary to the ALJ's findings, plaintiff's treating physician and consulting physician both diagnosed CFS, prior to December 31, 1989, as a source of plaintiff's disability.

Second, the ALJ discounted plaintiff's testimony because the claimant did not work between 1982 and 1987, because plaintiff was caring for her mother. Tr. 17. The court fails to find the relevancy of this explanation since this time period is not part of the claim.

Third, the ALJ discredited plaintiff's testimony because she quit her job due to extreme frustration with her boss and had applied for a new job in 1988. Tr. 17. Again, the relevancy of this rationale is unclear. Looking for work is not the same as being able to perform work and by spring of 1989, plaintiff was no longer seeking employment. Tr. 68.

Fourth, the ALJ discredited the plaintiff's testimony because her answers were elicited through "leading/suggestive questioning by her attorney." Tr. 17. Given plaintiff's memory loss and the seven-year time frame between the subject matter of the testimony and the date of the oral hearing, the court recognizes the challenges faced by plaintiff and her attorney. Further, the court finds that the questioning was not unduly leading, but only requested more detailed clarification from the plaintiff.

For the reasons stated above, the court finds that the ALJ did not provided sufficient reasons for rejecting the plaintiff's testimony. Thus her testimony will be credited as a matter of law. *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir.1995).

*B. Testimony of the Treating Physician*

■ The ALJ rejected the opinion of Dr. Johansen regarding plaintiff's alleged disability because he did not first opine until 1992 that plaintiff was disabled, stating that "either she is nonfunctional and nonemployable in her present condition." Tr. 308. An ALJ may reject the uncontradicted opinion of a treating or examining physician by providing clear and convincing reasons supported by substantial evidence in the record. *See Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir.1995); *Andrews,* 53 F.3d at 1043; *Murray v. Heck-*

*ler,* 722 F.2d 499, 502 (9th Cir.1983). If contradicted, the ALJ may reject the opinion with specific and legitimate reasons. *Id.* However, "medical evaluations made after the expiration of the claimant's insured status are relevant to an evaluation of the pre-existing condition" *Smith v. Bowen,* 849 F.2d 1222, 1225 (9th Cir.1988). A diagnosis even several years after the actual onset of the impairment is entitled to significant weight. *Dousewicz v. Harris,* 646 F.2d 771, 774 (2d Cir.1981). These findings are particularly apt given the nature of CFS and the diagnostic challenge that it presents. Thus, the ALJ failed to provide clear and convincing reasons for rejecting Dr. Johansen's diagnosis of plaintiff.

■ After the ALJ released his findings, plaintiff appealed the decision to the Appeals Council and submitted additional evidence that included a letter from Dr. Johansen. The letter summarized Dr. Johansen's belief that plaintiff suffered from CFS, that she is not a malingerer, and that she was unemployable after July 31, 1988. Tr. 404. The Appeals Council dismissed the letter from Dr. Johansen, stating that Dr. Johansen's medical report is "essentially the same as that appearing in an earlier report.... Further Dr. Johanson does not provide any additional clinical or diagnostic evidence in support or his assessment, regarding the period at issue." Tr. 4. The Commissioner may disregard a treating physician's opinion if it is brief and conclusionary with little clinical findings to support its conclusion. *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir.1989). However, it appears that this is the first time that Dr. Johansen was specifically asked whether the plaintiff was disabled during that time period and in his opinion, whether she was a malingerer. While he did not reference specific clinical findings, the physician has maintained extensive reports based on a twelve year medical relationship that are included in the record, Tr. 289–351, that would support his conclusions. Accordingly, the

ALJ and Appeals Council erred in rejecting Dr. Johansen's conclusions.

## C. Testimony of the Vocational Expert

 The ALJ relied on the testimony of the VE in finding that the plaintiff could perform sedentary work such as a receptionist, a general office clerk, a general secretary and a typist. Tr. 19. However, the hypotheticals presented to the VE by the ALJ were incomplete by not including plaintiff's relevant symptoms. Tr. 80–85. By contrast, plaintiff's attorney specifically asked the VE if an individual "who lacked energy and was easily fatiguable could function in any of those positions." The VE responded that the individual would not be competitive and that energy level is an important component of the identified jobs. Tr. 88. Although an ALJ is not required to credit testimony that is not supported by the record, *Magallanes*, 881 F.2d at 756, the testimony of the plaintiff, the lay witness and the treating physician, supports the attorney's hypothetical as presented.

## CONCLUSION

The court holds that the ALJ and the Appeals Council decision that plaintiff is capable of performing sedentary work is not supported by substantial evidence. The next issue is whether to remand for further proceedings or to reverse. The decision is within the discretion of the court. *Reddick*, 157 F.3d at 728. If the record is fully developed, a remand for further proceedings is unnecessary. *Id.* In plaintiff's case, given her undisputed testimony, the extensive medical reports on record, and the hypothetical as presented by plaintiff's attorney to the VE, the record appears complete and benefits should be awarded to plaintiff.

For the reasons set forth above, the ALJ's findings are not supported by substantial evidence. Accordingly, the decision of the Commissioner is REVERSED and REMANDED for an award of benefits. IT IS SO ORDERED.